FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 6, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

---

TIMOTHY CHARLEY, individually, as personal representative of the Estate of Nena Charley, and as parent and next friend of Nile Charley,

  Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA; ROBIN RANELL SALES, RN; JOELLEE CATHERIN CERO GO, RN; AB STAFFING SOLUTIONS, LLC, a Foreign Corporation; NEXT MEDICAL STAFFING, a foreign corporation; JOHN OR JANE DOE CORPORATION,

  Defendants - Appellees.

No. 25-2052
(D.C. No. 1:22-CV-00033-JB-JFR)
(D.N.M.)

---

**ORDER AND JUDGMENT***

---

Before **HARTZ**, **MATHESON**, and **ROSSMAN**, Circuit Judges.

---

   * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10th Cir. R. 32.1.

Nena Charley contracted an acute viral illness, which doctors suspected was hantavirus. She died shortly after being admitted to the University of New Mexico Hospital in Albuquerque. Her estate and relatives (Plaintiffs) then sued the federal government and several health care providers (Defendants) for medical malpractice in federal district court in New Mexico. During discovery, Plaintiffs violated two court orders concerning the deposition of their expert witness Dr. Bruce Polsky, an infectious disease specialist who would opine on Ms. Charley's cause of death. As a result, the district court excluded him and also denied Plaintiffs' request—made long after the expert disclosure deadline had passed—to substitute a different expert on causation. Defendants moved for summary judgment, arguing that without expert evidence on causation—which New Mexico law required in this case—Plaintiffs could not prevail on their claims. The district court agreed and entered judgment for Defendants. Plaintiffs appeal, challenging the exclusion of Dr. Polsky, the refusal to allow a substitute causation expert, and the grant of summary judgment.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

2

# I

## A[1]

Around 1:00 a.m. on May 28, 2019, Nena Charley checked into the emergency room of the Gallup Indian Medical Center (GIMC) in Gallup, New Mexico, complaining of fever, high blood pressure, an elevated heart rate, body aches, a cough, headache, and loss of appetite. She had been exposed to mice droppings while working as a cleaner at a local dollar store. A doctor diagnosed her with acute viral syndrome and discharged her later that morning. RI.37.

Ms. Charley's symptoms worsened. At 10:27 a.m. that same day, she returned to GIMC in an ambulance. A different doctor evaluated her and ordered blood testing. The results led him to suspect Ms. Charley was suffering from hantavirus, a life-threatening viral illness that spreads through rodents and sometimes presents flu-like symptoms. Ms. Charley was then transported by helicopter to Albuquerque for treatment at the University of New Mexico Hospital. She died there at 4:20 a.m. the following morning.

---

[1] We draw the facts in this opinion from our *de novo* review of the appellate record. *See Est. of Beauford* v. *Mesa County*, 35 F.4th 1248, 1257 n.2 (10th Cir. 2022) (reviewing the record *de novo* on review of summary judgment granted to defendant).

**B**

On October 13, 2022, Plaintiffs sued the federal government, two nurses at GIMC, and the healthcare staffing companies AB Staffing Solutions and Next Medical Staffing, claiming medical malpractice.[2] The complaint alleged the failure to timely diagnose and treat Ms. Charley for hantavirus caused her death. The case was assigned to the Honorable James Browning of the District of New Mexico.

**1**

Discovery commenced. The parties' initial deadline to disclose experts was November 20, 2022. After receiving four extensions, Plaintiffs disclosed their expert witnesses and expert reports on July 21, 2023. Under New

---

[2] Plaintiffs brought their claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* "The FTCA allows those injured by federal employees to sue the United States for damages" by waiving "the federal government's sovereign immunity for certain torts[.]" *Martin* v. *United States*, 605 U.S. 395, 400 (2025) (internal quotation marks omitted) (citing 28 U.S.C. § 1346(b)). Liability under the FTCA requires a "negligent or wrongful act or omission" by a federal government employee "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Supreme Court has explained the phrase "law of the place" in § 1346(b) requires a federal court to use the "law of the State" as "the source of substantive liability under the FTCA." *FDIC* v. *Meyer*, 510 U.S. 471, 478 (1994). Here, there is no dispute Plaintiffs must prove their claims under New Mexico substantive tort law. We also note that, although Plaintiffs initially sued other defendants including the GIMC and Ms. Charley's treating physician, those other defendants were substituted by the United States pursuant to the FTCA. The parties do not challenge that substitution on appeal.

Mexico law, expert evidence is generally "essential to support an action for malpractice against a physician or surgeon."[3] *Toppino* v. *Herhahn*, 673 P.2d 1297, 1300 (N.M. 1983) (first citing *Crouch* v. *Most*, 432 P.2d 250 (N.M. 1967); and then citing *Cervantes* v. *Forbis*, 389 P.2d 210 (N.M. 1964)). Plaintiffs designated Dr. Bruce Polsky—a practicing clinician and chairman of the Department of Medicine at NYU Long Island School of Medicine and NYU Langone Hospital—as their expert witness on causation. Dr. Polsky would opine it was "[m]ore likely than not Nena Charley would have survived had Defendants[] diagnosed [her] with hantavirus on her first visit to GIMC." RV.1144 (first alteration in original).

---

[3] Like the district court and the parties, we use the term "medical malpractice" to refer to the claims at the heart of this appeal. Although Plaintiffs' complaint did not expressly enumerate counts or claims for recovery, the district court read the complaint as alleging claims for medical malpractice, medical negligence, and negligent hiring, training, and supervision. On appeal, the parties do not take issue with that reading, and Plaintiffs fail to make any argument concerning the claims for negligent hiring, training, and supervision. *See Morphew* v. *Chaffee County*, 172 F.4th 802, 809 n.4 (10th Cir. 2026) ("Issues not raised on appeal are deemed to be waived." (quoting *Krastev* v. *INS*, 292 F.3d 1268, 1280 (10th Cir. 2002))). There may be some procedural differences under New Mexico law between a medical-malpractice claim and a medical-negligence claim, *see Siebert* v. *Okun*, 485 P.3d 1265, 1270–71 (N.M. 2021), but none bear on this appeal, and the parties have never argued otherwise. Relevant here, the district court held, and the parties have never disputed, "New Mexico law requires expert testimony on causation in this case." RV.1252. Like the parties, then, we understand this medical-malpractice claim to turn on the issue of causation—*i.e.*, whether Defendants' actions caused Ms. Charley's injuries.

Scheduling Dr. Polsky's deposition proved challenging. After a months-long scheduling impasse, the parties seemed close to an agreement to hold the deposition, at a place yet to be determined, on October 19, 2023. But at 12:44 p.m. on October 12, Dr. Polsky emailed Plaintiffs' counsel alerting them that he "could not continue to hold the October 19th date." RII.300. Plaintiffs' counsel missed Dr. Polsky's email.

At a status hearing on October 13 before Judge Browning, Plaintiffs' counsel—unaware of Dr. Polsky's email about his unavailability—told the court that Dr. Polsky could be deposed on October 19. The court then ordered Dr. Polsky's deposition to be held on October 19.

On October 16, the government emailed a deposition notice to Plaintiffs' counsel, stating Dr. Polsky would be deposed in New York on October 19. The next day, October 17, Plaintiffs' counsel saw Dr. Polsky's October 12 email saying he could not appear at the deposition. At 10:50 p.m. on October 17, Plaintiffs' counsel emailed the government attorney who was planning to conduct the deposition: "I need to find a few minutes to talk with you tomorrow." RI.242. The email did not mention Dr. Polsky was unavailable to sit for his scheduled deposition. The government attorney saw the email from Plaintiffs' counsel early the next morning on October 18 while boarding his flight to depose Dr. Polsky in New York. Upon landing, the government attorney called Plaintiffs' counsel and left a message.

Plaintiffs' counsel called back later that evening, alerting the government that Dr. Polsky would not be attending his deposition the next morning.

Plaintiffs then filed a notice of non-appearance and a motion for protective order. The district court set a hearing on November 14 to discuss the matter.

**2**

In advance of the hearing, the government filed a motion to exclude Dr. Polsky from the case under Federal Rules of Civil Procedure 30(d) and 37(b). In the government's view, excluding Dr. Polsky would be "a proper sanction" for Plaintiffs' failure "to comply with the Court's order to produce Dr. Polsky at his deposition." RI.215. In support, the government marshaled the factors in *Ehrenhaus* v. *Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992), which are used to guide a court's discretion whether to dismiss a case as a sanction under Rule 37.

In response, Plaintiffs argued excluding Dr. Polsky would be "much too harsh of a sanction." RII.257. Recognizing "[t]he necessity of expert [causation] testimony in this matter," Plaintiffs stressed that excluding Dr. Polsky would be "dispositive[.]" RII.265–66 (internal quotation marks omitted). They urged the court to decide their case "on the merits" and "not on a misunderstanding of deposition availability." RII.266.

The day before the hearing, on November 13, Judge Browning's courtroom deputy called Plaintiffs' counsel and instructed them to bring dates when Dr. Polsky could be deposed in New Mexico. The court entered a minute order later that day to the same effect.

At the hearing on November 14, the district court began by expressing it was "very disappointed" that the deposition of Dr. Polsky had not occurred as ordered. RII.306. Plaintiffs' counsel had been instructed to "[s]how up today with dates that Dr. Polsky can be here in Albuquerque and be available for a deposition[,]" the district court said. RII.306. The court then asked Plaintiffs' counsel, "did you come with those dates?" RII.306. Plaintiffs' counsel demurred: "Your Honor, we filed a response to the motion to exclude. . . . We wanted you to have a response from us about the process that we'd gone through to get to where we were at." RII.306–07. The court returned to its question. "I don't want to hear argument from you right now[,]" the court said. RII.307. "I want to know [about the dates]." RII.307. Plaintiffs responded, "Certainly, Dr. Polsky cannot — showing up here from New York would c[ost] him three days." RII.307. The district court responded, "Then we'll probably just exclude him then. We've had enough with Dr. Polsky." RII.307.

In a later colloquy at the hearing, the district court asked Plaintiffs' counsel why Dr. Polsky had failed to show up for his deposition on October 19.

Plaintiffs: Because he has obligations in his academic —

Court: He chose a faculty meeting rather than coming to the deposition; correct?

Plaintiffs: Your Honor, I don't believe it was his choice. He has . . . .

Court: If he's going to sign up to be a federal expert, he has to do what courts say. Once he comes into the field of judicial work, he's got to obey court orders. And he chose to go to a faculty meeting rather than doing what he needed to do as an expert in this case. . . .

Plaintiffs: I don't know what his expectations are for his full employment. . . . [H]e sent an email I had not seen on the 12th, that he had to give the date up. He was pressured to do something he had to do, and so he took that date off the calendar. I just didn't know it. And so when we had our hearing on the 13th, I thought that date was set. . . . This is a Hantavirus case. Hantavirus is rare to the world — not in Gallup — but finding an expert in infectious disease that is qualified to speak on Hantavirus is a very complicated mechanism. . . . This is a hard, hard expert to have. The expert is not trying to treat the Court with disrespect.

Court: Then why do I not have a date today for him to be in Albuquerque to be deposed?

Plaintiffs: Because his ability to knock out three days from his schedule that he has is impossible for him, where —

Court: It just seems with this doctor everything is impossible. . . . [H]e needs to help you with the mess that's been created by getting himself here. I'm willing to give that. But you

9

kind of disobeyed another Court order. I told you to come here with dates, and you're saying you can't come — I don't know how he's supposed to testify if he's not going to come to Albuquerque. We've got a trial coming up. What's he going to do then?

Plaintiffs: Trial is months away, and we can book it that fast. . . .

Court: I have spent more time on Dr. Polsky than I think Dr. Polsky has on getting this deposition done. I mean, this is a doctor that's not making himself available to be deposed. I gave you another chance this week, saying: Give me a date for him to be here. And you're telling me: No, he can't be here. So I don't think that we need to be wasting any more time with Dr. Polsky.

Plaintiffs: Your Honor, as I've requested, Dr. Polsky has given additional dates. . . . It's the being here part is the hardest.

Court: So [the government's counsel] has to get back on a plane, and go two days because Dr. Polsky doesn't have time to come out here. That's just shifting the burden to the other party. . . . [I]f he can make himself available for trial in Albuquerque, he needs to make himself available for a deposition in Albuquerque.

Plaintiffs: And you understand, Your Honor, the burden that that places on the case, the cost of the case.

Court: Dr. Polsky has imposed a tremendous burden on the Court and the parties. . . . I think the train has come and gone. I gave you a chance to bring a date today, or dates, let me look at them, talk to [government's counsel] and see if we can make them work. But that didn't happen, so I think [the] motion needs to be granted.

RII.321–33.

Plaintiffs then expressed that excluding Dr. Polsky—their sole causation witness—amounted to "a de facto dismissal" of their lawsuit.

10

RII.335. And the *Ehrenhaus* factors relied on by the government to justify

Dr. Polsky's exclusion, Plaintiffs argued, were "not met" here. RII.334.

Ultimately, Judge Browning excluded Dr. Polsky, reasoning:

> I don't get any pleasure out of doing this, and I do it with great reluctance. But I just don't think I'm being fair to the defendants if I—particularly the United States—if I don't grant the motion. I was willing to not go that far. If Dr. Polsky would make a date available today, or dates available today, I thought probably I could live with that compromise. But I think we're at a point where he's just not making himself available, and helping out the Court and the plaintiffs by trying to correct a situation about the difficulties of getting his deposition taken. So I will grant the motion [to exclude Dr. Polsky]. I'll also order all costs for [government's counsel] going out there [to New York], as well as preparing the motion. . . . Dr. Polsky will not be allowed to testify in this trial.

RII.345–46.

Plaintiffs also asked the court to allow them to substitute Dr. Polsky,

referencing an unnamed "local expert[.]" RII.331. Judge Browning said

Plaintiffs were "welcome to file" a motion for a substitute expert, but also

observed the expert disclosure deadline has "come and gone." RII.333–34,

346.

### 3

About two weeks later, on November 30, 2023, Plaintiffs filed a motion

under Rules 59 and 60 asking the district court to reconsider excluding

Dr. Polsky. Given that "New Mexico requires a plaintiff to use expert

testimony . . . to prove causation[,]" RII.354, Plaintiffs argued the motion to

11

exclude Dr. Polsky "is essentially equivalent to a motion for summary judgment or motion to dismiss[,]" RII.356. Plaintiffs insisted they would be "substantially prejudiced" without Dr. Polsky and "[f]inding an expert in infectious disease that is qualified to speak on hantavirus is complicated." RII.354–55 (heading formatting omitted). Plaintiffs said Dr. Polsky would be available for a deposition in Albuquerque on January 23, 2024.

Plaintiffs also asked to substitute Dr. Polsky with another expert— although, again, they did not identify anyone. "Plaintiffs understand the deadline for expert disclosures has passed," they said, "but due to the harm to Plaintiffs' case without an infectious disease expert Plaintiffs respectfully request the Court allow Plaintiffs to obtain another expert." RII.356. The government opposed, arguing Plaintiffs had "failed to show they are entitled to reconsideration under any standard and failed to justify their repeated disregard for their discovery obligations and this Court's orders." RII.458.

In December 2023, Defendants moved for summary judgment as a matter of law. They argued Plaintiffs' medical-malpractice claims were not viable without an expert witness on causation. In response, Plaintiffs urged the court to defer ruling on the summary-judgment motion and allow Dr. Polsky's deposition "to go forward." RII.520. In the alternative, Plaintiffs

suggested Dr. David Glaser—their expert witness on the standard of care— could also serve as an expert on causation.

On January 5, 2024, the district court held a hearing on the reconsideration and summary-judgment motions. Ruling from the bench, the district court refused to reconsider its decision to exclude Dr. Polsky. Judge Browning said, "I do think that Dr. Polsky[] has just not earned, and doesn't deserve any confidence that he would be here on any date that the Court has set." RIII.700. He then denied Plaintiffs' request to substitute Dr. Polsky with a different causation expert. "I don't think it makes any sense, if I'm excluding [Dr.] Polsky, to let you go get another expert[,]" Judge Browning explained. RIII.725. "I think that defeats the purpose." RIII.788. As to the motion for summary judgment, the court said it was "inclined to grant" summary judgment to Defendants. RIII.788. The court then vacated the trial date and promised the parties it would issue an opinion at a future date explaining its rulings in depth.

On July 18, 2024, Plaintiffs moved for relief under Rules 59 and 60(b)(2) based on "newly discovered evidence" they claimed was unavailable during summary-judgment briefing. RIV.803–04 (heading formatting omitted). Relevant here, Plaintiffs produced an affidavit from Dr. Michelle Harkins, a pulmonologist who treated Ms. Charley at the University of New Mexico Hospital. Dr. Harkins had previously been disclosed by Plaintiffs as

13

a fact witness. Her affidavit opined, "had Nena Charley's care been properly handled . . . by higher than a reasonable medical probability she could have survived her hantavirus." RIV.820. Defendants moved to strike the affidavit, pointing out Plaintiffs had never deposed Dr. Harkins or named her as an expert, the expert-disclosure deadline had passed more than a year earlier, and the district court had already denied Plaintiffs' request to substitute Dr. Polsky with a different expert.

On September 9, 2024, the district court issued a short order granting the government's motion to exclude Dr. Polsky, denying the motion for reconsideration, and granting summary judgment to all Defendants. The court did not address the Dr. Harkins affidavit. In a footnote, the court again promised to "issue at a later date . . . a Memorandum Opinion more fully detailing its rationale for its decision." RIV.934 n.1.

In March 2025, the court held a hearing on Plaintiffs' motion about the Dr. Harkins affidavit. Judge Browning reminded Plaintiffs that he had granted them leave to depose Dr. Harkins in October 2023—a year and a half earlier—and asked why they had never deposed her. Plaintiffs' counsel responded, "I have to be perfectly honest with you, Judge. . . . I don't recall it." Aple. App'x at 116. Plaintiffs' counsel continued, "Your Honor, instead of deposing her, we got an affidavit from her on the points concerning causation, and asked her to serve in the capacity as an expert in the case."

14

Aple. App'x at 117. Judge Browning then concluded, "I think we're kind of going over the same grounds that we have for quite a while. . . . But I just think that I've got to run a court here. And to allow the plaintiff to come in and put in a new affidavit, no expert report, I think would just kind of create a shambles for how we do things in federal court." Aple. App'x at 118–19.

On March 31, 2025, the district court entered another order, denying Plaintiffs' motion and reiterating its disposition of all claims. The order once again promised the court "will issue, at a later date . . . a Memorandum Opinion more fully detailing the rationale for its decision." RV.1108 n.1. Plaintiffs filed a notice of appeal on May 20.

**4**

On June 30, 2025, the district court issued a memorandum opinion and order (June 30 opinion), explaining its decisions to exclude Dr. Polsky, to reject Plaintiffs' request that Dr. Harkins testify as a substitute expert, and to grant summary judgment for Defendants on the medical-malpractice claims. We describe that decision in detail.

Citing *Ehrenhaus*, the court first explained its decision to exclude Dr. Polsky. The court said it had entered the November 14 hearing "desperately [] not want[ing] to exclude Dr. Polsky[.]" RV.1231. In Judge Browning's view, the court had "bent over backwards to help Dr. Polsky and Plaintiffs' counsel," giving them another chance to schedule a deposition after the

15

failed New York deposition, RV.1239 n.26. But Plaintiffs "decided not to take up the Court's lifesaver," and at that point, the court had "no good options going forward." RV.1239 n.26. "[F]rom a litigation-management perspective," the court concluded, its "only play" was "to exclude the Plaintiffs' expert." RV.1233–34.

The court also discussed its decision to deny Plaintiffs' motion for reconsideration. Plaintiffs' "inability to facilitate Dr. Polsky's deposition shifted this case's focus 'from the merits to the collateral and needless,'" the court explained, "and ultimately has consumed '[h]ours, days, weeks of lawyers' time . . . at great expense.'" RV.1236 (quoting *Lee* v. *Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011)). The court said the delays "deprive[] the parties, and the Defendants in particular, of a valuable litigation data point that might have played an important role in whether the case proceeded to trial or settled." RV.1241–42. The court emphasized Dr. Polsky had been "uncooperative," RV.1238, and his "noncompliance with the Court's orders" had been "willful[,]" RV.1226. "Expert witnesses have to bend some to the reality of litigation deadlines, no matter how important their testimony is to the case's outcome[,]" the court said. RV.1238. When experts "sign up for litigation in districts in the middle of the country, the parties and the Court run the litigation, and they have to accommodate their schedule to the schedule of others." RV.1238.

16

The district court then elaborated on its decisions not to allow Dr. Harkins to serve as a substitute expert on causation. "Allowing the Plaintiffs a re-do on their causation expert runs into the same problems that Dr. Polsky's proffered January, 2024, date faces[,]" the court said. RV.1243. The court observed Plaintiffs had received four extensions of the expert-disclosure deadline, and "[t]heir inability to wrangle their experts quickly does not make the Court confident that they will be any faster this time around." RV.1243. The court also declined to consider Dr. Harkins' "untimely" affidavit as evidence at summary judgment. RV.1262. The affidavit, the court explained, had been submitted almost a year after the expert-disclosure deadline and months after the summary-judgment briefs and hearing. "The party at fault for the original delay — the Plaintiffs — wants to cause additional delay[,]" the court concluded. RV.1243. "That is not a strong position to take, and it does not convince the Court to reverse course[.]" RV.1243.

The court then turned to the summary-judgment motions. The court agreed with the parties "New Mexico law requires expert testimony on causation in this case," because "[l]aypeople do not know" the medical details necessary to understand a claim involving a death from hantavirus. RV.1252. But the court had excluded Dr. Polsky, and refused to allow a substitute, so Plaintiffs had no causation expert. The absence of evidence

17

on an element of Plaintiffs' claims, the court ruled, meant Defendants were entitled to summary judgment as a matter of law.

The court entered final judgment that same day, dismissing Plaintiffs' medical-malpractice claims with prejudice.[4]

## II

Plaintiffs seek reversal, contending the district court erred, *first*, by excluding their causation expert Dr. Polsky as a sanction; *second,* by refusing to allow Dr. Harkins to serve as a substitute expert on causation; and *third*, by granting summary judgment to Defendants without considering Dr. Harkins' affidavit. We review the first and second issues for abuse of discretion and the third issue *de novo*. We discern no error.

---

[4] Typically, a notice of appeal must be filed "within 30 days *after*" a final decision. FED. R. APP. P. 4(a)(1)(A) (emphasis added). Plaintiffs prematurely filed their notice of appeal more than a month *before* the June 30 opinion and entry of final judgment, and Plaintiffs never filed an amended or second notice of appeal. "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles* v. *Russell*, 551 U.S. 205, 214 (2007). And "[a]lthough neither party challenges our appellate jurisdiction, we have an independent duty to examine our own jurisdiction." *Clinton* v. *Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1273 (10th Cir. 2023) (internal quotation marks omitted). We conclude we have jurisdiction over this appeal and can review the June 30 opinion. The posture here resembles that of *FirsTier Mortgage Co.* v. *Investors Mortgage Insurance Co.*, 498 U.S. 269 (1991), where the Court found jurisdiction over a final order that, like the June 30 opinion, merely fleshed out an earlier order resolving all claims but with little explanation. *See* 498 U.S. at 277.

## III

### A

Rule 37 permits a court to issue an order "dismissing the action," among other sanctions, "[i]f a party . . . fails to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2)(A)(v). We review a district court's sanction decision under Rule 37 for abuse of discretion. *See Ins. Corp. of Ir.* v. *Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706 (1982). District courts have "very broad discretion to use sanctions where necessary" to ensure "the expeditious and sound management of the preparation of cases for trial." *Lee*, 638 F.3d at 1320 (quoting *In re Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984) (*en banc*)). When reviewing a decision to sanction a litigant, we deploy a "totality of the circumstances approach[.]" *Davis* v. *Miller*, 571 F.3d 1058, 1064 (10th Cir. 2009) (citing *In re Baker*, 744 F.2d at 1440).

Under well-settled circuit precedent, a district court "should ordinarily evaluate" five factors before imposing dismissal as a sanction:

1) the degree of actual prejudice to the [other party];
2) the amount of interference with the judicial process;[]
3) the culpability of the litigant;
4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and
5) the efficacy of lesser sanctions.

*Gripe* v. *City of Enid,* 312 F.3d 1184, 1187 (10th Cir. 2002) (first alteration in original) (quoting *Ehrenhaus*, 965 F.2d at 921). "[O]ften some of these

19

factors will take on more importance than others." *Ehrenhaus*, 965 F.2d at 922. We have also considered the five "*Ehrenhaus* factors" when—as relevant here—"the exclusion of evidence carries the force and effect of dismissal."[5] *HCG Platinum, LLC* v. *Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017).

## B

Plaintiffs challenge the district court's decision to exclude Dr. Polsky as a sanction on three grounds, but none is availing.

## 1

Plaintiffs first contend the district court committed legal error in failing to analyze every *Ehrenhaus* factor before excluding Dr. Polsky.[6] *See*

---

[5] The parties agree our review of the district court's decision to exclude Dr. Polsky turns on the *Ehrenhaus* factors. Those "factors give district courts a roadmap to use" in evaluating sanctions decisions, and this court has relied on the factors "in resolving a variety of analogous violations[.]" *King* v. *Fleming*, 899 F.3d 1140, 1150 (10th Cir. 2018); *see Lee*, 638 F.3d at 1323 (explaining the *Ehrenhaus* factors "are simply a non-exclusive list of sometimes-helpful criteria or guide posts the district court may wish to consider in the exercise of what must always remain a discretionary function" (internal quotation marks omitted)).

[6] The government says Plaintiffs have waived their *Ehrenhaus* arguments for failure to raise them before the district court and for inadequate briefing on appeal. We do not agree. The district court relied in part on *Ehrenhaus*, as the government acknowledges. *See* U.S. Resp. Br. at 34 (stating the court "did touch nearly every *Ehrenhaus* base" (internal quotation marks omitted)). "[W]e may consider [an issue] on appeal if the district court explicitly considered and resolved the issue of law on the

20

*Conkle* v. *Potter*, 352 F.3d 1333, 1335 n.4 (10th Cir. 2003) (explaining "a district court decision that is normally reviewed for an abuse of discretion will be reviewed de novo when the district court's decision turns on an issue of law" (brackets and internal quotation marks omitted)). In their view, the district court was "required to address the *Ehrenhaus* factors[,]" Op. Br. at 16, and the court's "omission is reversible error," Op. Br. at 19. We disagree.

Recall, in its June 30 opinion, the district court extensively cited *Ehrenhaus* but said it would "explain[] its decision to exclude Dr. Polsky without relying exclusively on the *Ehrenhaus* factors." RV.1228. Because the *Ehrenhaus* factors "are not a one-size-fit-all framework for all discovery sanctions," the court declined to rely on the factors "exclusively." RV.1228. The district court did not err in taking that approach. Our decision in *Lee* helps explain why. There, the district court dismissed the case as a sanction for plaintiffs' repeated discovery violations. On appeal, plaintiffs argued the district court's failure to "provide a detailed evaluation" of the *Ehrenhaus* factors required reversal. *Lee*, 638 F.3d at 1323 (internal quotation marks omitted). We rejected the argument. "[W]e have repeatedly explained that we will uphold a district court's sanctions order of dismissal or default" even where "the court has not evaluated the *Ehrenhaus* factors" and "not all the

---

merits." *Underwood* v. *Bank of Am. Corp.*, 996 F.3d 1038, 1055 (10th Cir. 2021) (alterations and internal quotation marks omitted).

factors are satisfied in a particular case—so long as our independent review of the record confirms that the district court didn't abuse its discretion." *Id.* (brackets and internal quotation marks omitted). In other words, "a district court's failure to mention or afford the[ factors] extended discussion does not guarantee an automatic reversal." *Id.* at 1324.

So too here. The district court did not rely "exclusively" on the *Ehrenhaus* factors, RV.1228, but the court did not need to do so. We will reverse only if we "independently discern an abuse of discretion in the district court's sanctions order based on the record before us." *Lee*, 638 F.3d at 1324. We turn to that question now.

2

Plaintiffs next argue the district court's decision to exclude Dr. Polsky as a sanction for Plaintiffs' failures to comply with court orders cannot be justified under the *Ehrenhaus* factors. "We review the imposition of sanctions for abuse of discretion." *Auto-Owners Ins. Co.* v. *Summit Park Townhome Ass'n*, 886 F.3d 852, 857 (10th Cir. 2018). In so doing, "we examine the district court's legal determinations de novo, and its underlying factual findings for clear error." *Shaw* v. *Smith*, 166 F.4th 61, 74 (10th Cir. 2026) (internal quotation marks omitted); *see United States* v. *Garcia*, 74 F.4th 1073, 1095 (10th Cir. 2023) (explaining "it is commonplace for us to review the general ruling of a district court for an abuse of

22

discretion while displacing a district court's underlying factual findings only upon a showing of clear error" and "reviewing the district court's legal conclusions de novo" (internal quotation marks omitted)). We see no abuse of discretion. We structure our explanation around the five *Ehrenhaus* factors that the parties agree inform our review of this issue. *See Ehrenhaus*, 965 F.2d at 921.

*First*, the district court permissibly found actual prejudice to Defendants as a result of Plaintiffs' violation of two court orders. Plaintiffs' "mistakes[,]" RV.1242 n.27, the district court explained, led the government to waste "hours, days, weeks of lawyers' time," including on travel for a deposition that never happened, RV.1236 (brackets omitted) (quoting *Lee*, 638 F.3d at 1321). As the district court explained, Plaintiffs' conduct deprived Defendants of an opportunity to engage in settlement negotiations and to assess whether the case should proceed to trial. Plaintiffs insist the "real prejudice in this case fell on Plaintiffs, who fatally lost their causation expert." Op. Br. at 22. But the first *Ehrenhaus* factor examines prejudice to *Defendants*, not to *Plaintiffs. See Procter & Gamble Co.* v. *Haugen*, 427 F.3d 727, 740 (10th Cir. 2005) (considering "[p]rejudice to defendants").[7]

---

[7] Plaintiffs also rely on *Gillum* v. *United States*, 309 F. App'x 267 (10th Cir. 2009), an unpublished case involving medical-malpractice claims under the FTCA, to argue the district court misunderstood the prejudice prong under *Ehrenhaus* and the cure prong under *Woodworker's*. But there, we

*Second*, the district court had ample reason to conclude Plaintiffs' missteps actually interfered with the judicial process. As the district court observed, Plaintiffs violations of two court orders "delayed the litigation by months[.]" RV.1242 n.27. Permitting the Plaintiffs to use Dr. Polsky as an expert would "be terribly disruptive to the Court." RIII.788. The district court seemed to place special weight on this factor, and Plaintiffs do not argue that weighing amounts to an abuse of discretion. *See Auto-Owners*, 886 F.3d at 860–61 (finding no abuse of discretion in how the district court weighed a particular *Ehrenhaus* factor where that weighing appeared "reasonable").

*Third*, we see no basis to disturb the district court's finding that Plaintiffs were sufficiently culpable for their missteps. The district court found Plaintiffs demonstrated "willful noncompliance with the Court's orders." RV.1226. On appeal, Plaintiffs contend the district court misunderstood the culpability prong of the *Ehrenhaus* inquiry. In Plaintiffs' view, "culpability" requires "bad faith" or "willful disobedience[,]" which is

---

found error in the district court's prejudice analysis in part because the court focused on an "improper[]" consideration. *Gillum,* 309 F. App'x at 270 (explaining the district court "improperly focused on the fact that the inadequate report permanently deprived the United States of the opportunity to confront [the expert] 'flat-footed' at his deposition"). That is not the case here. And, as we will explain, we see no abuse of discretion in the district court's conclusion that lesser sanctions would not be appropriate here.

absent here. Op. Br. at 24. According to Plaintiffs, a "mistake in communicating is not willful misconduct required to justify dismissal." Reply Br. at 2 (internal quotation marks omitted). Relatedly, Plaintiffs challenge as "clearly erroneous" the district court's "finding of willfulness," claiming Dr. Polsky missed the deposition only because of a "miscommunication." Op. Br. at 25. We reject both contentions.

To start, Plaintiffs misunderstand the level of blameworthiness required by our precedent. "*Ehrenhaus* did not establish a floor of culpability." *Auto-Owners*, 886 F.3d at 860. Dismissal based on a discovery violation must "be predicted upon 'willfulness, bad faith, *or some fault of petitioner*' rather than inability to comply." *Archibeque* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (emphasis added) (brackets omitted) (quoting *Nat'l Hockey League* v. *Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976) (*per curiam*)). For purposes of this inquiry, "[w]e have defined a willful failure as 'any intentional failure as distinguished from involuntary noncompliance. *No wrongful intent need be shown.*'" *Klein-Becker USA, LLC* v. *Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013) (emphasis added) (quoting *In re Standard Metals Corp.*, 817 F.2d 625, 628–29 (10th Cir. 1987)).

Applying those principles here, the record supports the district court's conclusion that Plaintiffs willfully failed to comply with court orders. *See*

25

*Middleton* v. *Stephenson*, 749 F.3d 1197, 1198–99 (10th Cir. 2014) (finding no clear error where, as here, the finding of the district court had "factual support in the record, and we lack a definite and firm conviction that the district court got it wrong"). The district court zeroed in on Plaintiffs' failure to provide deposition dates on November 14 as the "dispositive moment" showing sufficient culpability. RV.1238–39 n.26; *see* RV.1232 ("[I]f the Plaintiffs had offered dates, the Court would have denied the Exclusion Motion."). Not only did the court call Plaintiffs' counsel the day before the hearing with instructions to bring deposition dates for Dr. Polsky, but the court also issued a minute order to the same effect. Plaintiffs evidently failed to grasp the gravity of these orders. We see no error in the district court's conclusion that Plaintiffs were sufficiently blameworthy for the delays that had frustrated the district court and delayed the proceedings. *See Gripe*, 312 F.3d at 1187, 1189–90 (finding no error in the district court's conclusion that the culpability factor favored dismissal given counsel's repeated failures to follow court orders and stating "[t]hose who act through agents are customarily bound by their agents' mistakes").

*Fourth*, Plaintiffs had adequate notice that failure to comply with a court order could lead to dismissal. "We have held that an express warning of dismissal is not required. Instead, we have regarded notice as sufficient even when it is constructive, rather than express." *Auto-Owners*, 886 F.3d

26

at 861 (finding constructive warning where the district court vaguely said only that "the court will impose sanctions against the parties and/or their counsel pursuant to the court's inherent authority"); *Ehrenhaus*, 965 F.2d at 919, 921 (finding the district court's oral warning—for plaintiff to "expect a motion from the defendants that [the] case be dismissed"—sufficiently put plaintiff "on notice that failure to comply" would subject his claims to dismissal); *Ecclesiastes 9:10-11-12, Inc.* v. *LMC Holding Co.*, 497 F.3d 1135, 1150 (10th Cir. 2007) (finding "constructive notice" based on "the totality of the circumstances," including the district court's generic warning that further violations could lead to sanctions and that the parties should proceed "with all dispatch").

To be sure, as Defendants concede, the district court did not expressly warn Plaintiffs that dismissal was a possible sanction for noncompliance. But we find particularly instructive that, after informing the government that Dr. Polsky would not attend his court-ordered deposition, Plaintiffs' counsel suggested she could either pay the costs for the government's travel or the government could "move[] to strike Dr. Polsky." RV.1164. And, in response to Defendants' motion to exclude Dr. Polsky, Plaintiffs acknowledged Dr. Polsky was "*essential*" to their case because of "[t]he necessity of expert testimony in this matter[.]" RII.265–66 (emphasis added) (internal quotation marks omitted). On the record before us,

27

Plaintiffs had at least constructive notice. *See Rogers* v. *Andrus Transp. Servs.*, 502 F.3d 1147, 1152 (10th Cir. 2007) (finding constructive notice where the risk of dismissal would have been "certainly known to every competent attorney").

*Fifth*, and finally, the district court acted within its discretion in concluding lesser sanctions—though available—were not appropriate here. Judge Browning viewed noncompliance with judicial orders by Plaintiffs' counsel as the main problem. That conduct, the court ruled, "undermines the Court's obligation to 'secure the just, speedy, and inexpensive determination of every action and proceeding.'" RV.1236 (quoting FED. R. CIV. P. 1). We acknowledge "[d]ismissal with prejudice is a severe sanction to which the courts should resort only infrequently." *Hall* v. *Vance*, 887 F.2d 1041, 1045 (10th Cir. 1989). Plaintiffs argue a number of "alternative lesser sanctions" would have been "just" to address their mistakes.[8] Op. Br. at 27–28. Maybe so. But the "dispositive question on appeal . . . is and always remains whether we can independently discern an abuse of discretion in the

---

[8] In the June 30 opinion, the district court explained it would have imposed only a lesser sanction—a monetary penalty—*if* Plaintiffs had provided new dates at the November 14 hearing for Dr. Polsky's deposition in New Mexico. After Plaintiffs failed to comply, the district court said it "los[t] . . . trust" that Dr. Polsky would ever comply. RV.1234.

district court's sanctions order based on the record before us." *Lee*, 638 F.3d at 1323–24. We cannot.

Accordingly, the district court did not abuse its discretion by excluding Dr. Polsky as a sanction for Plaintiffs' failure to comply with court orders.

**3**

Plaintiffs next contend reversal is required because excluding Dr. Polsky resulted in "fundamental unfairness." Op. Br. at 28 (heading formatting omitted). In their view, the decision to exclude Dr. Polsky "was fundamentally unfair because it was premised on a miscommunication and a failure to meet extraordinary if not impossible conditions set by the district court without warning that dismissal was the punishment for failure." Op. Br. at 28–29. We are not persuaded.

The district court made clear that "[f]airness . . . underpins the Court's decision to exclude Dr. Polsky." RV.1234. But the court found that allowing Dr. Polsky to be deposed after Plaintiffs failed to abide by two court orders would be unfair to Defendants. The court explained:

> If the United States were to not comply with a Court order, the Court would have to come down hard on the United States, because the Court holds the federal government's attorneys to a high standard of professional responsibility and legal acumen. It is only fair that, when an opposing party does not comply with Court orders, and the United States is on the other end of the

noncompliance, the Court backs up the United States as the defendant. It has to be fair to both sides.

RV.1234. In light of these findings, which the record supports, "we would be hard pressed to conclude" the district court's exclusion decision was "fundamentally unfair" to Plaintiffs.[9] *Ecclesiastes 9:10-11-12*, 497 F.3d at 1143.

In sum, we affirm the district court's decision to exclude Dr. Polsky.

## IV

Plaintiffs next argue the district court abused its discretion in refusing to allow Dr. Harkins to substitute as an expert on causation. We fail to see any error.

## A

We review a district court's decision to refuse a substitute expert, including due to untimeliness, for abuse of discretion. *HCG Platinum*, 873 F.3d at 1201; *Hamric* v. *Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1119 (10th Cir. 2021). Rule 26 requires parties to disclose the identity of expert witnesses within the time "set by . . . court order[.]" FED. R. CIV.

---

[9] Our precedent has several times stated a district court can abuse its discretion where the exclusion of evidence "would result in 'fundamental unfairness in the trial of the case[.]'" *Jacobsen* v. *Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting *Orjias* v. *Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994)). But we are not aware of any case in this circuit turning on fundamental unfairness. Nor do Plaintiffs cite any.

P. 26(a)(1)(A), (C). Rule 37 states that, if a party fails to identify its expert according to the requirements of Rule 26, then "the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworker's Supply, Inc.* v. *Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal quotations marks omitted). A "district court has wide discretion to exclude expert testimony for which notice is untimely" and may "justifiably exclude[ expert] testimony on timeliness grounds alone." *Essence, Inc.* v. *City of Federal Heights*, 285 F.3d 1272, 1289 (10th Cir. 2002) (first citing *United States* v. *Diaz*, 189 F.3d 1239, 1247 (10th Cir. 1999); and then citing *United States* v. *Adams*, 271 F.3d 1236, 1244 (10th Cir. 2001)).

Typically, a district court's evaluation of substantial justification and harmlessness under Rule 37 involves four factors:

(1) the prejudice or surprise to the non-moving party;
(2) the ability of that party to cure the prejudice;
(3) the disruptiveness to the trial of introducing such testimony; and
(4) the moving party's bad faith or willfulness.

*See Woodworker's Supply*, 170 F.3d at 993. In cases where the exclusion of evidence has "the necessary force and effect" of a case-ending dismissal, we

31

have advised district courts to also consider (5) "the efficacy of lesser sanctions." *HCG Platinum*, 873 F.3d at 1203–06. The parties agree our review turns on these five factors.[10] "We generally expect the district court to consider these factors when deciding whether to exclude" evidence, *Raymond* v. *Spirit AeroSystems Holdings, Inc.*, 125 F.4th 1016, 1032 (10th Cir. 2025), but a court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," *Woodworker's Supply*, 170 F.3d at 993.

## B

Plaintiffs argue the district court erred in refusing to allow Dr. Harkins to substitute for Dr. Polsky as a causation expert. Specifically, Plaintiffs say the court erred by failing to analyze at least some of the

---

[10] In their briefing, Plaintiffs used the *Woodworker's/HCG Platinum* factors to analyze the exclusion of Dr. Harkins. *See* Op. Br. at 13 (stating the exclusion of Dr. Harkins "operates as a merits dismissal" and therefore required the district court to apply "the *Woodworker's* prejudice/cure analysis and weigh less-drastic alternative[s]"). At oral argument, Plaintiffs contended, for the first time, our review of the decision to exclude Dr. Harkins should be guided by the *Ehrenhaus* factors. To be sure, those factors are highly similar to the *Woodworker's/HCG Platinum* factors; the main difference is that *Ehrenhaus* also considers whether the party to be sanctioned was warned. We generally do not consider "contentions raised for the first time in oral argument." *United States* v. *Gaines*, 918 F.3d 793, 801 (10th Cir. 2019). In any event, we see no difference between the *Woodworker's/HCG Platinum* factors and the *Ehrenhaus* factors that would bear on the disposition of this appeal. We assume without deciding that the *Woodworker's/HCG Platinum* factors apply here.

*Woodworker's/HCG Platinum* factors before ruling Dr. Harkins could not serve as a replacement expert. To the extent the court analyzed the factors, Plaintiffs say, the court did so incorrectly. We disagree.

Plaintiffs never formally moved for Dr. Harkins to serve as an expert. Rather, Plaintiffs first named Dr. Harkins as a possible substitute expert in their motion for relief based on "newly discovered evidence." RIV.803 (bolding and capitalization omitted). That motion was filed July 2024—almost a year after the expert-disclosure deadline, seven months after summary-judgment briefing, and six months after the court ruled Plaintiffs could not replace Dr. Polsky with a substitute expert. In its June 30 opinion, the district court found Dr. Harkins' affidavit "untimely," RV.1262, and ruled Plaintiffs' late-stage effort to designate her as an expert would "cause additional delay[,]" RV.1243. Accordingly, the court declined to allow Dr. Harkins to serve as a substitute expert.

To be sure, the court did not reference the *Woodworker's* criteria when explaining its decision to prohibit Dr. Harkins from serving as an expert. But a failure to "mechanically recite" the *Woodworker's* factors does not require reversal. *HCG Platinum*, 873 F.3d at 1201. As we have repeatedly said, "a district court 'need not make explicit findings concerning the existence of a substantial justification or the harmlessness' of a Rule 26(a) violation" before prohibiting Dr. Harkins from substituting as an expert.

*Jacobsen* v. *Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting

*Woodworker's Supply*, 170 F.3d at 993); *see HCG Platinum*, 873 F.3d at 1201

("[T]he district court's ultimate reasoning *should* reveal consideration of the

*Woodworker's* criteria."); *see also Searles* v. *Van Bebber*, 251 F.3d 869, 878

n.5 (10th Cir. 2001) (finding no abuse of discretion where "the judge

probably considered the four factors *sub silentio*").

In any event, we are satisfied the district court's analysis as to

Dr. Harkins captured "the lion's share" of the criteria referenced in

*Woodworker's. HCG Platinum*, 873 F.3d at 1201. In particular, the district

court found Dr. Harkins would prejudice or "harm" Defendants and disrupt

the trial. RV.1241. And the district court found Plaintiffs were responsible

for the untimely request.

Resisting our conclusion, Plaintiffs argue reversal is compelled by

*Rimbert* v. *Eli Lilly & Co.*, 647 F.3d 1247 (10th Cir. 2011). But that case is

factually distinguishable. In *Rimbert*, unlike here, Plaintiff was "not at

fault" for missing a vacated deadline. *Id.* at 1255. "In the normal course of

events," *Rimbert* made clear, "district courts are well within permissible

discretion to deny the opportunity to name a new expert after discovery has

closed."[11] *Id.* at 1256. Here, the expert-disclosure deadline was July 21,

---

[11] The "procedural oddities" and "unique circumstances" essential to *Rimbert* are not present in this case. *Rimbert*, 647 F.3d at 1257. There,

2023. Plaintiffs did not formally move—either before or after that deadline—for Dr. Harkins to serve as an expert. And, in their January 2024 brief opposing summary judgment, Plaintiffs did not even mention using Dr. Harkins as a substitute expert. Unlike in *Rimbert*, the district court's refusal to allow Dr. Harkins was not "impossible to predict" in light of Plaintiffs' mistakes and noncompliance with court orders. *Rimbert*, 647 F.3d at 1256. Under these circumstances, we cannot say the district court abused its discretion in not allowing Plaintiffs to name a new causation expert after the expert-disclosure deadline expired. *Cf. United States* v. *Nacchio*, 555 F.3d 1234, 1253 (10th Cir. 2009) (*en banc*) ("Courts are not disposed to allow litigants to have two or more bites at the proverbial apple.").

## V

Finally, we consider Plaintiffs' challenge to the grant of summary judgment for Defendants. In Plaintiffs' view, Dr. Harkins' affidavit creates a genuine dispute of material fact as to causation, and the district court

---

defendant moved to exclude plaintiff's only causation expert and was denied. *See id.* at 1250. The case was then reassigned to a new judge, who vacated the existing scheduling order. Defendant renewed his motion to exclude, which the new judge granted, reversing the original judge. Plaintiff then moved for a new deadline to substitute a different expert, but the new judge ruled plaintiff "had not shown good cause for a modification of the [vacated] scheduling order[.]" *Id.* We reversed the exclusion of the expert, stressing the unique posture of the case. *Id.* at 1256–57.

should have considered it in resolving the summary judgment motion. Plaintiffs' argument misses the mark, as we explain.

"We review the grant of summary judgment *de novo*[.]" *See Est. of Beauford* v. *Mesa County*, 35 F.4th 1248, 1261 (10th Cir. 2022). Under Rule 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "If the movant carries this initial burden, . . . the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Thom* v. *Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (quoting FED. R. CIV. P. 56(e)). "The summary judgment standard requires us to construe the facts in the light most favorable to the nonmovant and to draw all reasonable inferences in its favor." *Est. of Beauford*, 35 F.4th at 1261.

The parties do not dispute that, under New Mexico law, Plaintiffs' medical-malpractice claims require expert evidence to establish a causal connection between Ms. Charley's injuries and the medical provider's failure to meet the standard of care. *See Toppino*, 673 P.2d at 1300 ("Ordinarily expert evidence is essential to support an action for malpractice against a physician or surgeon." (first citing *Crouch*, 432 P.2d

250; and then citing *Cervantes*, 389 P.2d 210)); *Harvey* v. *United States*, 685 F.3d 939, 950 (10th Cir. 2012) (explaining that, under the FTCA, "federal courts generally look to state law to determine whether an FTCA malpractice case requires expert evidence"). After excluding Dr. Polsky and refusing Plaintiffs' request to substitute Dr. Harkins, the district court concluded Plaintiffs lacked expert evidence on causation. On that basis, the court granted summary judgment to Defendants.

Even assuming Dr. Harkins' affidavit could have served as evidence from a fact witness, Plaintiffs still lacked the *expert* evidence that they acknowledge is necessary to prove their medical malpractice claims under New Mexico law. Plaintiffs do not argue otherwise.[12] Accordingly, we cannot conclude the district court erred in concluding Defendants are entitled to summary judgment as a matter of law. *See Felkins* v. *City of Lakewood*, 774 F.3d 647, 648, 651 (10th Cir. 2014) (affirming the grant of summary

---

[12] In reply, Plaintiffs for the first time develop a summary-judgment argument that does not depend on Dr. Harkins. "Even setting aside the Polsky and Harkins errors," Plaintiffs contend, "the record contained admissible causation evidence sufficient to create material factual disputes: the testimony of Plaintiffs' expert Dr. David Glaser, as well as Dr. Gregory Mertz, [and] the United States' own infectious disease expert." Reply Br. at 24–25. But this argument was not raised in Plaintiffs' opening brief, and "[w]e will not address these belated contentions." *McNellis* v. *Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1136 n.11 (10th Cir. 2024) (explaining "[w]e routinely have declined to consider arguments that are not raised . . . in an appellant's opening brief" (internal quotation marks omitted)).

judgment where plaintiff-appellant lacked expert evidence to support her claim requiring it).

## VI

We **AFFIRM** the district court's grant of summary judgment to Defendants.

Entered for the Court

Veronica S. Rossman
Circuit Judge